IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAYLAN BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-04007 |
| | ) |
| TRAVIS STAES, East Moline Police Officer, in his individual capacity; ETHAN BUSH, Hampton Police Officer, in his individual capacity; JACK ASQUINI, Rock Island County Sheriff's Deputy, in his individual capacity; JASON PEÑA, Rock Island County Sheriff's Deputy, in his individual capacity; and JOHN DOES 1 and 2, unknown law enforcement officers, in their individual capacities, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff Jaylan Butler has always known that he could be targeted by police officers because he is Black. Mr. Butler's father taught him at a young age how to maximize his chances of surviving an encounter with law enforcement—stop instantly, put your hands up, drop anything you are holding, and drop to your knees. Mr. Butler hoped he would never have to use his father's advice. His hope was shattered on February 24, 2019 when, within minutes, Mr. Butler went from riding on a bus with his college swim team returning from a conference championship swim meet, to being forcefully held on the ground by police officers with a handgun pressed into his forehead while a police officer threatened to "blow [his] fucking head off" if he moved. Even once the police officers realized that this was a case of mistaken identity and that Mr. Butler had committed no crime, they continued with his detention and arrest.

**JURISDICTION AND VENUE**

2. This civil action arises under 42 U.S.C. § 1983. The Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391 because all of the conduct complained of occurred within this District.

**PARTIES**

4. Plaintiff Jaylan Butler is a student at Eastern Illinois University in Charleston, Illinois.

5. Defendant Travis Staes was at all relevant times a police officer acting under color of state law for the City of East Moline, Illinois. Defendant Staes is sued in his individual capacity.

6. Defendant Ethan Bush was at all relevant times a police officer acting under color of state law for the City of Hampton, Illinois. Defendant Bush is sued in his individual capacity.

7. Defendant Jack Asquini was at all relevant times a Sheriff's deputy acting under color of state law for the County of Rock Island, Illinois. Defendant Asquini is sued in his individual capacity.

8. Defendant Jason Peña was at all relevant times a Sheriff's deputy acting under color of state law for the County of Rock Island, Illinois. Defendant Peña is sued in his individual capacity.

9. Defendants JOHN DOE 1 and 2 are unknown police officers who acted under color of state law. Defendants DOE 1 and 2 are sued in their individual capacities.

**FACTS**

10.     Mr. Butler attends Eastern Illinois University in Charleston, Illinois, and is a member of the school's swim team.

11.     In February 2019, the Eastern Illinois University swim team competed in the Summit League Swimming and Diving Championships in Sioux Falls, South Dakota.

12.     On February 24, 2019, the Eastern Illinois University swim team was traveling by charter bus from South Dakota back to Charleston, Illinois. After several hard days of swimming, Mr. Butler was looking forward to relaxing and socializing with his teammates on the long bus ride home.

13.     Shortly after 8:00 p.m., the bus pulled over on a frontage road off of Interstate 80 near a rest stop in East Moline, Illinois. Mr. Butler and several students stepped off the bus to stretch their legs. One of Mr. Butler's coaches suggested he take a photo of a road sign that said "Buckle Up. It's the Law" to post on the team's social media account. Mr. Butler took a photo of himself smiling in front of the sign, and then began walking back toward the bus.

14.     After only a few steps, several law enforcement vehicles with flashing lights suddenly pulled up in front of him.

15.     Defendants Staes and Bush were in one of those vehicles. On information and belief, Defendants Asquini, Peña, Doe 1, and Doe 2 were in separate vehicles.

16.     When Mr. Butler saw the law enforcement vehicles pull up, he was surprised and confused, but knew what to do. He instantly stopped, put his hands up, dropped the cell phone that was in his hand, and dropped to his knees.

17. Mr. Butler had not committed or attempted to commit any crime. The officers did not observe Mr. Butler committing any crime, attempting to commit any crime, or behaving suspiciously.

18. Defendants exited the vehicles with their firearms pointed at Mr. Butler. At least one Defendant was carrying what appeared to be a rifle.

19. Defendants shouted at Mr. Butler: "Get down!" and "Don't fucking move! Stay right there!"

20. Mr. Butler kept his hands up and complied with Defendants' orders.

21. Defendants forced Mr. Butler to lie face down on the snowy ground.

22. On information and belief, Defendants Staes, Asquini, Peña, and additional Defendants held Mr. Butler down while Defendant Bush handcuffed his arms behind his back.

23. Defendant Asquini pressed his right knee into Mr. Butler's back, and at least one Defendant was pressing down on Mr. Butler's neck.

24. Another Defendant was squatting down in front of Mr. Butler. He put his handgun against Mr. Butler's forehead and said, "If you keep moving, I'm going to blow your fucking head off."

25. Mr. Butler was unarmed and did not exhibit any behavior to suggest he was carrying a weapon.

26. Mr. Butler did not resist Defendants and complied with all of Defendants' orders.

27. Mr. Butler never threatened Defendants or anyone else, or made any threatening movements.

4

28. The charter bus driver asked Defendants what they were doing with his passenger. Mr. Butler's swim coach explained to the officers that Mr. Butler was part of the Eastern Illinois University swim team.

29. Mr. Butler also tried to explain to Defendants that he was part of the Eastern Illinois University swim team and the charter bus was the swim team's bus.

30. Defendants quickly realized that Mr. Butler was not the suspect for whom they were searching. Defendant Staes informed the local dispatcher that it was a false alarm.

31. After several minutes of forcing Mr. Butler to lie face down on the ground while handcuffed, Defendants allowed Mr. Butler to sit up. They did not, however, remove his handcuffs or inform him that he was free to go, even though they had already recognized that Mr. Butler was not the suspect for whom they were searching.

32. Defendants told Mr. Butler he was being arrested for resisting arrest.

33. Defendants had no justification for continuing to detain Mr. Butler.

34. After several more minutes of sitting on the ground handcuffed, Defendants picked up Mr. Butler and forced him over to a squad car. Defendants patted him down, searched inside of his coat pockets, and placed him in the back of a squad car.

35. Defendants left Mr. Butler in the squad car for several minutes.

36. Thereafter, Defendants finally removed Mr. Butler's handcuffs and asked him to retrieve his identification card from the bus. Mr. Butler complied and was released from police custody.

37. Defendants never told Mr. Butler why they detained and arrested him, particularly after recognizing that he was not the suspect for whom they were searching.

38.     Mr. Butler informed at least two Defendants that he wanted to make a complaint. The first Defendant ignored him. The second Defendant said, "There's nothing I can do." Neither Defendant gave Mr. Butler any of the Defendants' names, badge numbers, law enforcement agency affiliations, or any other information to enable him to file a complaint.

39.     Defendants did not document the stop and search as required under the Illinois Traffic and Pedestrian Stop Statistical Study Act, 625 ILCS 5/11-212.

40.     Defendants did not give Mr. Butler a receipt for the stop and search as required under 725 ILCS 5/107-14.

41.     Mr. Butler was traumatized by this incident. Since the event, he has felt angry, scared, and depressed. He has had trouble concentrating at school and participating in activities.

42.     In class the next day, Mr. Butler found himself staring down at the bruises around his wrists, replaying the previous night's events in his head until finally he realized his class had ended and he was the only person still sitting there.

43.     Over the next several months, Mr. Butler tried to keep a positive outlook and not think about this frightening incident, but his emotions still surfaced. He became acutely aware of the presence of police officers, and seemingly innocuous events would trigger feelings of fear and anxiety. One day, upon seeing multiple officers responding to a car accident, he began to tear up as he relived his experience with Defendants.

44.     Mr. Butler began seeing a therapist to address the trauma and depression caused by Defendants' conduct.

45.     Defendants' unlawful conduct directly and proximately caused Mr. Butler's emotional distress.

46. Each of the Defendants personally participated in the unlawful conduct described herein, or failed to intervene or stop the other Defendants from engaging in the unlawful conduct.

### COUNT I: Fourth Amendment, 42 U.S.C. § 1983
### Unlawful Search and Seizure

47. The allegations of paragraphs 1 through 46 are realleged and incorporated by reference as if fully set forth herein.

48. Defendants seized Mr. Butler when they ordered him to get on the ground. This seizure did not end until Mr. Butler's handcuffs were removed and he was free to leave the scene.

49. Defendants did not have a reasonable suspicion that Mr. Butler had committed, was committing, or was about to commit a crime at any point during their seizure of Mr. Butler.

50. Mr. Butler did not match the description of the suspect for whom Defendants were searching.

51. Defendants intentionally and unlawfully patted down and searched Mr. Butler without reasonable suspicion, probable cause, consent, or any other lawful justification.

52. Defendants did not have a reasonable suspicion to believe that Mr. Butler was concealing a weapon or otherwise posed any danger to the officers or others at the time they patted him down and searched his pockets.

53. Defendants acted under color of law when they searched and seized Mr. Butler.

54. The actions of Defendants described herein violated the rights of Mr. Butler to be free from unlawful searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.

## COUNT II: Fourth Amendment, 42 U.S.C. § 1983
### False Arrest

55. The allegations of paragraphs 1 through 54 are realleged and incorporated by reference as if fully set forth herein.

56. Defendants arrested Mr. Butler without probable cause.

57. Defendants acted under color of law when they arrested Mr. Butler without probable cause.

58. The actions of Defendants described herein violated the rights of Mr. Butler to be free from unlawful seizures as guaranteed by the Fourth Amendment of the United States Constitution.

## COUNT III: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Detention

59. The allegations of paragraphs 1 through 58 are realleged and incorporated by reference as if fully set forth herein.

60. Defendants arrested Mr. Butler without an arrest warrant.

61. Defendants unreasonably delayed releasing Mr. Butler from custody.

62. Defendants acted under color of law when they unreasonably delayed releasing Mr. Butler.

63. The actions of Defendants described herein violated the rights of Mr. Butler to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States Constitution.

## COUNT IV: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Force

64. The allegations of paragraphs 1 through 63 are realleged and incorporated by reference as if fully set forth herein.

65. Defendants intentionally used force against Mr. Butler.

66. The force Defendants used was unreasonable in light of the facts and circumstances.

67. Defendants acted under color of law when they used unreasonable force against Mr. Butler.

68. The actions of Defendants described herein violated the rights of Mr. Butler to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States Constitution.

### COUNT V: Fourth Amendment, 42 U.S.C. § 1983
### Failure of Bystander Officers to Intervene in Unconstitutional Conduct

69. The allegations of paragraphs 1 through 68 are realleged and incorporated by reference as if fully set forth herein.

70. As alleged in Counts I-IV, Defendants violated Mr. Butler's constitutional rights.

71. The bystander Defendants who were present but did not participate in the violations of Mr. Butler's constitutional rights knew that the other Defendants were about to violate Mr. Butler's constitutional rights.

72. The bystander Defendants had a realistic opportunity to do something to prevent harm from occurring to Mr. Butler.

73. The bystander Defendants failed to take reasonable steps to prevent harm from occurring to Mr. Butler.

74. The bystander Defendants' failure to act caused Mr. Butler to suffer harm.

## **COUNT VI: Fourth Amendment, 42 U.S.C. § 1983**
**Civil Conspiracy**

75. The allegations of paragraphs 1 through 74 are realleged and incorporated by reference as if fully set forth herein.

76. On February 24, 2019, Defendants agreed to unlawfully search Mr. Butler without reasonable suspicion or probable cause that Mr. Butler was in the course of committing or had committed a crime. Defendants then unlawfully patted down and searched Mr. Butler without reasonable suspicion, probable cause, or any other lawful justification.

77. Despite awareness of all Defendants that Mr. Butler was not the suspect, Defendants agreed to leave Mr. Butler handcuffed in the snow and subsequently move him to the squad car. Defendants had no lawful justification for continuing to detain Mr. Butler.

78. Defendants agreed not to provide Mr. Butler any information. Mr. Butler informed at least two Defendants that he wanted to make a complaint. Neither Defendant provided Mr. Butler with any of the Defendants' names, badge numbers, law enforcement agency affiliations, or any other information that would have enabled him to file a complaint. Defendants did not document the stop and search as required under the Illinois Traffic and Pedestrian Stop Statistical Study Act, 625 ILCS 5/11-212. Defendants did not give Mr. Butler a receipt for the stop and search as required under 725 ILCS 5/107-14.

79. In the course of this unlawful conduct, Defendants reached an agreement among themselves to deprive Mr. Butler of his constitutional rights and to protect each other from liability for depriving Mr. Butler of his rights.

80. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity that actually deprived Mr. Butler of his constitutional rights.

81. As a direct and proximate result of the illicit prior agreement referenced above, Mr. Butler's rights were violated and he suffered injuries, including, but not limited to, emotional distress as described above.

### COUNT VII: Article I, Section 6 of the Illinois Constitution

82. The allegations of paragraphs 1 through 81 are realleged and incorporated by reference as if fully set forth herein.

83. Defendants unreasonably and unlawfully arrested, detained, searched and used force against Mr. Butler.

84. The actions of the Defendants described herein violated the rights of Mr. Butler to be free from unreasonable searches, seizures, and invasions of privacy as guaranteed by Article I, Section 6 of the Illinois Constitution.

### COUNT VIII: State Tort of False Imprisonment

85. The allegations of paragraphs 1 through 84 are realleged and incorporated by reference as if fully set forth herein.

86. Defendants unreasonably and/or unlawfully restrained Mr. Butler's personal liberty against his will.

87. Defendants intended to restrain Mr. Butler.

88. Based upon the foregoing, Defendants are liable for the Illinois common law tort of false imprisonment.

### COUNT IX: State Tort of False Arrest

89. The allegations of paragraphs 1 through 88 are realleged and incorporated by reference as if fully set forth herein.

90. Defendants restrained and/or arrested Mr. Butler.

91.     Defendants did not have reasonable grounds to believe that Mr. Butler had committed an offense.

92.     Based upon the foregoing, Defendants are liable for the Illinois common law tort of false arrest.

### COUNT X: State Tort of Intrusion on Seclusion

93.     The allegations of paragraphs 1 through 92 are realleged and incorporated by reference as if fully set forth herein.

94.     Defendants intentionally invaded Mr. Butler's seclusion when they forcibly stopped, arrested, searched, and detained him without reasonable suspicion, probable cause, consent, or other lawful justification.

95.     Defendants' actions would be highly offensive to any reasonable person.

96.     Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

97.     The matter intruded upon was private.

98.     As a result of these intrusions, Mr. Butler has suffered mental anguish.

99.     Based upon the foregoing, Defendants are liable for the Illinois common law tort of intrusion upon seclusion.

### COUNT XI: State Tort of Assault

100.    The allegations of paragraphs 1 through 99 are realleged and incorporated by reference as if fully set forth herein.

101.    A currently unidentified Defendant screamed, "If you keep moving, I'm going to blow your fucking head off," while pointing his gun to Mr. Butler's head.

102.    This threat caused Mr. Butler to reasonably apprehend an imminent battery.

103. Defendant's actions were intentional.

104. Based upon the foregoing, Defendant is liable for the Illinois common law tort of assault.

## COUNT XII: State Tort of Battery

105. The allegations of paragraphs 1 through 104 are realleged and incorporated by reference as if fully set forth herein.

106. Defendants intentionally touched Mr. Butler's body when they forcefully pinned him to the ground.

107. Defendants' touching was harmful and/or offensive.

108. Based upon the foregoing, Defendants are liable for the Illinois common law tort of battery.

## COUNT XIII: State Tort of Intentional Infliction of Emotional Distress

109. The allegations of paragraphs 1 through 108 are realleged and incorporated by reference as if fully set forth herein.

110. Defendants' conduct described herein was extreme and outrageous.

111. Defendants intended to cause Mr. Butler emotional distress and/or recklessly disregarded the probability of causing Mr. Butler emotional distress.

112. Mr. Butler suffered severe and/or extreme emotional distress.

113. Mr. Butler's emotional distress was proximately caused by Defendants' outrageous conduct.

114. Based upon the foregoing, Defendants are liable for the Illinois common law tort of intentional infliction of emotional distress.

### **COUNT XIV: Civil Conspiracy to Violate Illinois Law**

115. The allegations of paragraphs 1 through 114 are realleged and incorporated by reference as if fully set forth herein.

116. On February 24, 2019, Defendants agreed to unlawfully search Mr. Butler without reasonable suspicion or probable cause that Mr. Butler was in the course of committing or had committed a crime. Defendants then unlawfully patted down and searched Mr. Butler without reasonable suspicion, probable cause, or any other lawful justification.

117. Despite awareness of all Defendants that Mr. Butler was not the suspect, Defendants all agreed to leave Mr. Butler handcuffed in the snow and subsequently move him to the squad car. Defendants had no lawful justification for continuing to detain Mr. Butler.

118. Defendants agreed not to provide Mr. Butler with any information. Mr. Butler informed at least two Defendants that he wanted to make a complaint. Neither Defendant provided Mr. Butler with any of the Defendants' names, badge numbers, law enforcement agency affiliations, or any other information that would have enabled him to file a complaint. Defendants did not document the stop and search as required under the Illinois Traffic and Pedestrian Stop Statistical Study Act, 625 ILCS 5/11-212. Defendants did not give Mr. Butler a receipt for the stop and search as required under 725 ILCS 5/107-14.

119. The purpose of the conspiracy was to detain and search Mr. Butler and protect each other from liability for Defendants' unlawful actions.

120. In furtherance of this conspiracy, Defendants committed the above described tortious acts.

121. Defendants' tortious acts are the direct and proximate cause of Mr. Butler's harm, which includes but is not limited to humiliation and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Butler respectfully requests the following relief:

A.  A declaratory judgment that Defendants violated Mr. Butler's right to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the Fourth Amendment of the United States Constitution and Article I, Sections 6 of the Illinois Constitution.

B.  Compensatory damages, in an amount to be ascertained at trial.

C.  Punitive damages, in an amount to be ascertained at trial, for Defendants' intentional and/or willful and wanton conduct described herein.

D.  Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq.*

E.  Such other and further relief as this Court may deem just and proper.


DATED:  February 24, 2020

Respectfully submitted:

s/ Rachel Murphy
*One of Plaintiff's Attorneys*

Leslie Kuhn-Thayer
Shalyn Caulley
Bridget Murphy
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

Karen Sheley
Rachel Murphy
Rick Mula
Elizabeth Jordan
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Ste. 600
Chicago, Illinois 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on February 24, 2020, she caused the foregoing FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL to be filed electronically using the CM/ECF system which will send notification of such filing to all parties and attorneys of record who are CM/ECF participants.

                                           s/ Rachel Murphy